<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                United States Court of Appeals
                    For the First Circuit
                                

No. 98-1693

     ROSA CARDONA JIMENEZ AND CHARLES E. CASELLAS ROSARIO,

                     Plaintiffs, Appellees,

                               v.

                  BANCOMERCIO DE PUERTO RICO,

                     Defendant, Appellant.

          APPEAL FROM THE UNITED STATES DISTRICT COURT

                FOR THE DISTRICT OF PUERTO RICO

       [Hon. Jesus A. Castellanos, U.S. Magistrate Judge]

                             Before

                      Selya, Circuit Judge,
            Coffin and Cyr, Senior Circuit Judges.
                                
                                

    William Santiago Sastre with whom Marcos Valls Sanchez was on
brief for appellants.
    Fernando L. Gallardo for appellee.

April 6, 1999

                                
                                

 COFFIN, Senior Circuit Judge.  Plaintiff-appellee Rosa
Cardona Jimnez ("Cardona") was fired from her employment with
defendant-appellant Bancomercio de Puerto Rico ("Bancomercio").  
She subsequently brought suit under the Age Discrimination in
Employment Act, 29 U.S.C.  621-34, ("ADEA"), and under Puerto
Rico Law 100, P.R. Laws Ann. tit. 29,  146-51, ("Law 100").  
Cardona prevailed at trial, and on appeal Bancomercio claims that
the court incorrectly denied its motion for judgment as a matter of
law, in addition to committing other errors.  We agree that Cardona
failed to present sufficient evidence for a jury to find she had
been the victim of age discrimination, and therefore reverse.
                         I. Background
 The following facts are undisputed.  Cardona was
originally hired to work in the banking industry in 1972.  Through
a series of bank mergers and acquisitions, she eventually became an
employee of Bancomercio in 1991.  The following year Bancomercio
promoted her to manager of the Puerto Nuevo branch, where she was
in charge of half a dozen tellers and other employees.  During her
tenure at Bancomercio and its predecessors, Cardona had
consistently received highly positive evaluations of her
performance.
 From 1993 to 1995, Bancomercio was not performing as
profitably as it should have been, due apparently in part to
periodic discrepancies between cash inventories in tellers' drawers
and the amounts that ought to have been there.  As a consequence,
the bank began concentrating on those discrepancies to reduce
unaccounted for losses.  Bancomercio instructed the branch managers
to implement three specific procedures to safeguard the money
against possible theft.  First, the tellers had limits on the cash
they were allowed to have in their drawers.  If a teller received
deposits which increased the amounts in the drawer above that
limit, the manager would transfer some cash from that teller's
drawer to the vault.  Second, the manager was supposed to engage in
periodic verifications of the tellers' cash levels.  Managers did
not personally reconcile the actual cash in the drawers with the
teller's transactions on a daily basis.  To ensure that the tellers
were not dipping into the till, managers were instructed to conduct
random surprise counts of the drawers to check for discrepancies.  
Third, managers were responsible for checking daily whether each
drawer contained roughly the correct number of bundles of large
denomination bills.
 Consistent with these actions to be taken by managers,
Bancomercio also instituted a policy to be implemented by the Human
Resources department.  In light of the fact that Bancomercio
permitted its tellers to maintain personal accounts at the bank,
the Human Resources department was instructed to monitor the
tellers' accounts periodically, looking for unusual or suspicious
activity.
 Despite these procedures, a teller supervised by Cardona
at the Puerto Nuevo branch stole a significant amount of money.  An
auditor of the branch noticed that the teller, Lorna Ramirez
("Ramirez"), had developed a habit of making small deposits into
her bank account two or three times a week.  The auditor found this
pattern suspicious and informed the assistant vice president of
operations.  The assistant vice president, in turn, instructed
Cardona to perform a surprise cash verification the following day.  
When the check was performed, it was discovered that Ramirez's
drawer was more than $8,000 short of the $13,000 it should have
contained.  Ramirez was immediately dismissed, consistent with bank
policy.
 Bancomercio conducted an internal investigation and found
that Cardona had failed to take the three precautions required to
prevent precisely this sort of theft.  First, Cardona had permitted
Ramirez to retain $13,000 in her cash drawer, well in excess of her
$10,000 limit.  Second, Cardona had established a pattern for the
"surprise" cash verifications, thereby allowing Ramirez to
determine when such audits would take place and eliminating the
benefit of any surprise.  Third, the bank concluded that Cardona
had not counted the bundles of $20 bills, and consequently Ramirez
had placed rolls of coins under the bundles to artificially inflate
their appearance.  Ramirez, in fact, admitted that she had been
able to steal the money because she knew Cardona was not taking
these precautions.  The auditor also criticized the Human Resources
department for failing to give adequate attention to the pattern of
deposits in Ramirez's account.
 Bancomercio's Human Resources Committee met to discuss
the situation.  The members testified that they decided to fire
Cardona for failure to supervise her tellers adequately.  Cardona
was summoned to the bank's central offices and informed of the
bank's decision.  At that meeting, the bank told her that she would
receive her week's pay and all accrued vacation pay.  Bancomercio
also offered to pay her an extra $5000 in return for a release from
any claims against it, but she refused.  At the time of firing, she
was 41.  She was temporarily replaced by another employee, Wilfredo
Robles, who was also 41.  Her permanent replacement was Luisa
Guerrero, age 37.  Although Cardona was dismissed, the bank merely
reprimanded Giselle Lebron ("Lebron"), the head of Human Resources,
for failure to monitor Ramirez's account.
 Cardona sued Bancomercio, claiming age discrimination.  
The parties consented to trial before a magistrate judge.  See 28
U.S.C.  636(c).  At trial, the parties stipulated that, of the 166
employees hired between 1993 and 1995, 49 were born before 1955.  
Testimony also revealed that 9 of the 33 employees fired between
1993 and 1995 were born before 1955.
 At the close of Cardona's case, Bancomercio presented a
motion for judgment as a matter of law.  It renewed the motion at
the close of its case, and after the jury verdict.  Each time the
court denied it.
                         II. Discussion
 Bancomercio is entitled to judgment as a matter of law
only if there is no legally sufficient evidentiary basis for a
reasonable jury to find for the plaintiff.  See Fed. R. Civ. P.
50(a).  We review the court's denial of the bank's motion de novo,
taking the facts in the light most favorable to Cardona. See Russov. Baxter Healthcare Corp., 140 F.3d 6, 7-8 (1st Cir. 1998).  
Cardona must provide "more than a mere scintilla of evidence and
may not rely on conjecture or speculation to justify the submission
of an issue to the jury."  Id. (internal quotation marks omitted).  
Although she had other related subsidiary claims, Cardona's verdict
was premised on either her ADEA or her Law 100 claim, and our
analysis must start there.
 A. ADEA.  In relevant part, the ADEA prohibits
Bancomercio from discharging Cardona because of her age.  In a
wrongful discharge case such as this one, Cardona bears the
ultimate burden of proving that she would not have been fired but
for her age.  See Serrano-Cruz v. DFI Puerto Rico, Inc., 109 F.3d
23, 25 (1st Cir. 1997).  When the plaintiff has direct evidence of
discriminatory animus, the case may be put to the jury without
further ado.  See Trans World Airlines, Inc. v. Thurston, 469 U.S.
111, 121 (1985).  When, as here, direct evidence is lacking, the
plaintiff's ADEA claim is governed by the familiar McDonnell
Douglas burden-shifting framework.  See McDonnell Douglas Corp. v.
Green, 411 U.S. 792, 802-05 (1973); Alvarez-Fonseca v. Pepsi Cola
of Puerto Rico Bottling Co., 152 F.3d 17, 24 (1st Cir. 1998).   
 Under McDonnell Douglas, Cardona must first present a
prima facie case of age discrimination, which requires that she
show: 1) she was a member of a protected age group, i.e., at least
40 years old; 2) she was meeting Bancomercio's legitimate job
expectations; 3) she was fired; and 4) the employer had a
continuing need for the same services, and they subsequently were
performed by one with the same or similar qualifications as the
plaintiff.  See Brennan v. GTE Government Systems Corp., 150 F.3d
21, 26 (1st Cir. 1998).  Once she has met this modest burden, a
presumption of discrimination attaches, and Bancomercio must
articulate a legitimate, nondiscriminatory reason for firing her.  
See id.  If it does so, the presumption of discrimination vanishes
and Cardona must show by a preponderance of the evidence both that
the bank's reason was a pretext and that the real reason was age-
based animus.  See Alvarez-Fonseca, 152 F.3d at 24; Brennan, 150
F.3d at 26.  While Bancomercio briefly has the burden of producing
a legitimate reason for her discharge, Cardona shoulders the burden
of persuasion throughout.  See St. Mary's Honor Ctr. v. Hicks, 509
U.S. 502, 511 (1993); Serrano-Cruz, 109 F.3d at 26.
 Bancomercio concedes that Cardona has established her
prima facie case but argues that it has articulated a legitimate
reason which she failed to rebut.  We note that, even considering
the evidence in the light most favorable to Cardona, the bank's
reason is compelling.  The bank instructed branch managers to
undertake three specific measures to safeguard its capital, which
is the bank's very raison d'etre.  Whatever her previous
evaluations, the uncontested evidence showed that Cardona failed to
implement any of the three in the manner required by the bank.  As
a result of her dereliction, a teller under her supervision stole
more than $8,000.
    Cardona highlights two additional pieces of evidence to
meet her responsibility of demonstrating that the alleged reason
was pretextual and that her firing was actually motivated by age
animus.  First, she claims that between 1993 and 1995, 9 out of 33
individuals fired by the bank were over the age of 40.  Second, she
argues that Lebron, the head of Human Resources, was similarly
situated, was under 40, and was not punished as harshly as she was.  
Neither rationale carries the day.
    The evidence regarding the number of individuals whose
employment was terminated does not produce an inference of
discrimination.  In fact, it suggests the opposite.  Nine of the 33
dismissed translates into 27.3% of those fired being over 40.  
However, counsel also acknowledged that 49 of the 161 employees
hired during the same period, or 30.4%, were over 40.  The fact
that Bancomercio's pool of new employees contained a higher
percentage of individuals over 40 than its pool of discharged
employees suggests a lack of discrimination.  It is axiomatic that
in order to survive a motion for judgment as a matter of law, the
evidence Cardona presented must make the existence of the facts to
be inferred, namely pretext and age discrimination, more probable
than their nonexistence.  See Resare v. Raytheon Co., 981 F.2d 32,
34 (1st Cir. 1992).  Contrary to her argument, the numerical
comparison offered by Cardona actually makes age discrimination and
pretext less probable.
    The comparison with Lebron is equally unhelpful.  Cardona
claims that pretext and animus can be inferred from the fact that
Lebron was a similarly situated employee, was not over 40, was also
involved, but was not dismissed.  The problem with Cardona's
argument is that she and Lebron were not "similarly situated."  To
be "similarly situated" for the purpose of our discrimination
jurisprudence, the two individuals or situations must be similar
"in all relevant aspects."  Dartmouth Review v. Dartmouth College,
889 F.2d 13, 19 (1st Cir. 1989) (quotation omitted).  In order that
"apples [are] compared to apples[,]" we have stated that "the
'relevant aspects' are those factual elements which determine
whether reasoned analogy supports, or demands, a like result."  Id.
    Here it is obvious that Cardona and Lebron were not
situated similarly in all relevant aspects.  Cardona was the
branch manager who directly supervised Ramirez.  Bancomercio had
instructed Cardona to take several concrete steps to prevent
tellers from stealing, but she failed to do so.  Lebron, on the
other hand, was the head of Human Resources, and had no direct
supervisory responsibilities over Ramirez.  Any action on Lebron's
part would not have prevented the theft in the first instance; it
only would have led to a more prompt discovery of Ramirez's
conduct.  Bancomercio chose to dismiss the person who stole the
money, namely Ramirez, and her supervisor, namely Cardona, but not
a third person who lacked direct involvement in the branch's
operations, namely Lebron.  No prudent person could conclude that
Cardona's and Lebron's roles were sufficiently equivalent that
failure to dismiss Lebron bore on whether firing Cardona was based
on pretext and actually resulted from age animus.
    To withstand a motion for judgment as a matter of law,
Cardona must "elucidate specific facts which would enable a jury to
find the reason given [by Bancomercio] was not only a sham, but a
sham intended to cover up the [bank's] real motive: age
discrimination."  Medina-Munoz v. R.J. Reynolds Tobacco Co., 896
F.2d 5, 9 (1st Cir. 1990) (citations omitted).  She has failed to
present any such facts, and judgment as a matter of law should have
been entered for Bancomercio on her ADEA claim.
    B. Law 100.  Law 100 is the Puerto Rico equivalent of the
federal ADEA, providing for civil liability in age discrimination
actions.  Similar in several respects, the two statutes diverge on
how discrimination is to be proved.
    The most important difference involves the shifting of
the burden of proof.  Although the plaintiff in an ADEA case always
bears the burden of proof, Law 100 temporarily places that burden
on the employer, and thus is significantly more favorable to
plaintiffs than is the ADEA.  See Ibanez-Benitez v. Molinos de
Puerto Rico, Inc., 114 P.R. Dec. 42, 52 (1983).  Under Law 100, the
plaintiff has two requirements to establish a prima facie case: 1)
she must demonstrate that she was actually or constructively
discharged; and 2) she must allege that the decision was
discriminatory.  See Alvarez-Fonseca, 152 F.3d at 28.  Once this
minimal showing has been established, the burden shifts to the
employer to prove by a preponderance of the evidence that it had
"just cause" for its actions.  Id.  If the employer establishes
"just cause," the burden of proof returns to the plaintiff to show
that the employer's decision was motivated by age discrimination,
thereby placing the plaintiff "in the same situation as an ADEA
plaintiff after the defendant has articulated a legitimate non-
discriminatory reason[.]"  Id.  If, however, the employer fails to
prove "just cause," the employer bears the burden of proving that
the decision was not motivated by age discrimination.  Id.
    There can be no doubt that Cardona both proved she was
discharged and alleged that Bancomercio's decision was
discriminatory.  The burden then shifted to Bancomercio, but the
bank failed to present any developed argument about whether just
cause existed.  However, even if we assume that the bank has not
shown just cause, Bancomercio met its burden of proving by a
preponderance of the evidence that the decision was not motivated
by age discrimination.  Simply put, the closest approximation to
evidence of age discrimination was the basic fact that Cardona was
over 40 when fired and was replaced by someone slightly under 40.  
This fact is inconsequential in light of the compelling weight of
the bank's legitimate reason: her failure to take the precautions
necessary to protect the depositors' funds.  As has been said
several times, the uncontroverted evidence showed that she had been
instructed to monitor her tellers and to take certain security
measures but failed to do so.  While it may have been a severe
punishment, it is clear that Cardona was dismissed for her
dereliction and not for her age.  No reasonable jury could have
found otherwise.
                        III. Conclusion
    We conclude that no reasonable jury could have found for
Cardona under either the ADEA or Law 100.  Bancomercio proved by a
preponderance of the evidence that the decision to fire her was
based on her own failings and was not motivated by age
discrimination.  She was unable to present any sufficient reason to
disbelieve Bancomercio's proffered explanation.  Since she has not
presented enough evidence to prevail on the ADEA or Law 100 claims,
Cardona's subsidiary, related claims must also fail.
    For the foregoing reasons, the judgment is reversed.

</body>

</html>