**Candy BELL, Plaintiff,**

**v.**

**John E. POTTER, in his official capacity as Postmaster General of the United States of America, United States Postal Service, Defendant.**

**No. CIV.A. 00–10054–RBC [1].**

United States District Court,
D. Massachusetts.

Dec. 12, 2002.

---

**1.** With the parties' consent this case was referred and reassigned to the undersigned for all purposes including trial and the entry of judgment pursuant to 28 U.S.C. § 636(c).

Matthew Cobb, Law Firm of Matthew Cobb, Boston, MA, for Candy M. Bell, Plaintiff.

Barbara Healy Smith, U.S. Attorney's Office, Gina Y. Walcott–Torres, U.S. Attorney's Office, One Courthouse Way, Boston, MA, for John E. Potter, Postmaster General, Defendant.

### MEMORANDUM AND ORDER ON DEFENDANTS' (SIC) MOTION FOR JUDGMENT AS A MATTER OF LAW OR IN THE ALTERNATIVE FOR A NEW TRIAL (# 84)

COLLINGS, United States Magistrate Judge.

### I. INTRODUCTION

On June 4, 2002, following a six-day trial the jury returned a verdict in favor of the plaintiff Candy Bell ("Bell" or "plaintiff") on her Title VII retaliation claim as against the defendant John E. Potter, in his official capacity as Postmaster General of the United States Postal Service ("Potter" or "defendant"). Ten days later on June 14, 2002, the defendant filed his renewed motion for judgment as a matter of law pursuant to Rule 50(b), Fed.R.Civ.P., or in the alternative, that a new trial be granted pursuant to Rule 59, Fed.R.Civ.P.

(# 84) After the trial transcripts were filed, Potter submitted his memorandum in support of his Rule 50(b)/Rule 59 motion on August 23, 2002. (# 101) Bell filed her opposition to the defendant's motion (# 108) on September 6, 2002 and, with leave of Court, Potter filed a reply brief on September 26, 2002. (# 109) With the record now complete, the defendant's post-trial motion stands ready for decision.

## II. THE LAW—RULE 50(b), FED. R. CIV. P.

Prior to reaching the defendant's numerous arguments, it is perhaps best to set the contextual stage. In a nutshell, Bell claimed that the Postal Service subjected her to retaliation for having filed an EEO complaint. Such a claim, of course, is analyzed according to the familiar three-stage "burden-shifting" paradigm set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

In accordance with this analytical framework, it was incumbent upon the plaintiff first to make out a prima facie case of retaliation under Title VII. Courts have routinely noted that "[t]he prima facie burden is quite easy to meet." *Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 165 (1st Cir.1998) (internal quotation marks and citations omitted). "[A]ll that is needed is the production of admissible evidence which, if uncontradicted, would justify a legal conclusion of discrimination." *Brennan v. GTE Gov't Sys. Corp.*, 150 F.3d 21, 26 (1st Cir.1998) (citation omitted). To establish a prima facie case, Bell simply had to show that: 1) her employer was aware that she engaged in activity protected under Title VII (such as

filing an EEO complaint); 2) some adverse employment action followed; and 3) there was a causal connection between the protected activity and the adverse action, motivated in part by retaliation. See, e.g., *Hernandez–Torres v. Intercontinental Trading, Inc.*, 158 F.3d 43, 47 (1st Cir. 1998); *Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 33 (1st Cir.1990).

Proof of the Title VII prima facie case gives rise to a legally mandatory rebuttable presumption of, in this instance, retaliation. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. Once a prima facie case, and, hence, a presumption of discriminatory retaliation was established, then the burden shifted to the employer, Potter, to articulate a legitimate reason for the adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802, 93 S.Ct. 1817.[2] If the employer produces evidence of a non-retaliatory reason for its actions and the fact finder believes it, then the presumption of retaliation disappears. At that point, the plaintiff must prove by a preponderance of the evidence that the employer's stated reason for the adverse action was mere pretext and that, in fact, it was actually taken in retaliation. *McDonnell Douglas Corp.*, 411 U.S. at 804, 93 S.Ct. 1817; *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507– 508, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Rodriguez–Cuervos v. Wal–Mart Stores, Inc.*, 181 F.3d 15, 19 (1st Cir.1999). However, after the employer has interposed a non-retaliatory reason for its actions, the fact finder may still rely on evidence that was offered during the plaintiff's case-in-chief:

A satisfactory explanation by the defendant destroys the legally mandatory inference of discrimination arising from

---

**2.** To be clear, the defendant's burden is one of production; the plaintiff always carries the ultimate burden of persuasion in a Title VII claim. *Burdine*, 450 U.S. at 253, 101 S.Ct. 1089.

the plaintiff's initial evidence. Nonetheless, this evidence and inferences properly drawn therefrom may be considered by the trier of fact on the issue of whether the defendant's explanation is pretextual. Indeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation.

*Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. 1089.

Turning now to the motion at hand, it is important at the outset to detail the applicable standard. In this regard the Supreme Court has provided clear guidance:

Under Rule 50, a court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."

\* \* \* \* \* \*

In the analogous context of summary judgment under Rule 56, we have stated that the court must review the record "taken as a whole." And the standard for granting summary judgment "mirrors" the standard for judgment as a matter of law, such that "the inquiry under each is the same." It therefore follows that, in entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record.

In doing so, however, the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party [ ] that

the jury is not required to believe. That is, the court should give credence to the evidence favoring the nonmovant as well as that "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses."

*Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2109–2110, 147 L.Ed.2d 105 (2000) (internal citations omitted).

■ However, it is important to note that the defendant's Rule 50(b) motion in the instant case is made after the jury has returned its verdict for the plaintiff. That is not the time to be challenging the adequacy of Bell's prima facie case. As the First Circuit has written:

[W]hen, as now, an employment discrimination action has been submitted to a jury, the burden-shifting framework has fulfilled its function, and backtracking serves no useful purpose. To focus on the existence of a prima facie case after a discrimination case has been fully tried on the merits is to "unnecessarily evade[ ] the ultimate question of discrimination vel non." *United States Postal Serv. Bd. of Govs. v. Aikens*, 460 U.S. 711, 713–14, 103 S.Ct. 1478, 1481, 75 L.Ed.2d 403 (1983); see also *Mesnick*, 950 F.2d at 824–25. By like token, our evaluation of post-trial motions seeking relief from a jury's verdict in such a case is similarly confined to the ultimate question of discrimination. Consequently, to wander afield in pursuit of appellant's phantom "prima facie case" argument is a bit like undertaking early morning calisthenics: it might be good exercise, but it certainly is not essential to the business of the day.

*Sanchez v. Puerto Rico Oil Co.*, 37 F.3d 712, 720 (1st Cir.1994); see also *Alvarez–Fonseca v. Pepsi Cola of Puerto Rico Bottling Company*, 152 F.3d 17, 26 (1st Cir.

1998), cert. denied, 526 U.S. 1123, 119 S.Ct. 1778, 143 L.Ed.2d 806 (1999) ("Moreover, at this stage of the McDonnell Douglas analysis it is irrelevant whether or not the facts in question sufficed to establish a prima facie case or not. Instead, the question is whether the whole of the evidence mustered by the plaintiff, regardless of whether it was initially presented to establish the prima facie case or to show pretext, suffices to allow a finding that the defendant intentionally discriminated against him.")

## III. DISCUSSION—RULE 50(b) MOTION

Potter argues that Bell's evidence was insufficient on many grounds such that the verdict cannot stand. Specifically, it is asserted that the plaintiff failed to produce evidence upon which a reasonable jury could have concluded that: (1) the Fitness-for-Duty Examination ("FFD") was an "adverse action," (2) she filed her EEO complaint in good faith, (3) there was a causal connection between filing the complaint and the subsequent actions taken by the Postal Service, or (4) the reasons stated by the Postal Service for taking the adverse personnel actions were pretextual. (Memorandum in Support #101 at 1) These contentions shall be examined seriatim in order to determine whether, taking all the evidence in the light most favorable to the plaintiff, there was any legally sufficient basis for a reasonable jury to find in her favor.

*1. Is there sufficient evidence for a reasonable jury to conclude that scheduling an FFD constituted an adverse personnel action?*

While Potter concedes that the 14–day suspension and notice of removal were adverse personnel actions, he takes issue with the FFD being so characterized. It is argued that "the burden to articulate a nondiscriminatory reason for the FFD never shifted to the defendant" because the plaintiff failed to show that the FFD was an adverse employment action.[3] (#101 at 16) The defendant points out that his evidence was to the effect that the FFD was ordered for the plaintiff's benefit and perhaps even might have prevented her suspension and removal. (#101 at 5, 7) The problem with defendant's analysis is that it ignores the fact that the jury plainly believed Bell and disbelieved the witnesses called by the defendant on the issue.

▮ "Determining whether an action is materially adverse necessarily requires a case-by-case inquiry." *Blackie v. State of Maine*, 75 F.3d 716, 725 (1st Cir.1996). The jury was properly instructed to apply an objective test to make that determination. (#101 at 6 citing Jury Instructions V:103) Ultimately, it was for the jury to decide whether the FFD was an adverse employment action taken in retaliation for Bell's filing of the EEO complaint.

To support the jury's finding that the FFD was an adverse action, there must be some evidence that it resulted in a meaningful consequence to the plaintiff. *Bishop v. Bell Atlantic Corp.*, 299 F.3d 53, 59 (1st Cir.2002). While the defendant maintains that scheduling an FFD was either of no consequence or was actually a benefit to the plaintiff, ordering a psychological examination to determine if an employee is fit to continue working could be an adverse action.

---

**3.** As stated, supra, it is not material at this point whether the plaintiff made out a prima facie case. *Alvarez–Fonseca*, 152 F.3d at 26; *Sanchez*, 37 F.3d at 720. What is pertinent is whether, on the basis of all the evidence and taking that evidence in the light most favorable to the plaintiff, the jury could have found that the order sending her to an FFD was in retaliation for her having filed an EEO complaint.

Bell testified that when the FFD was ordered she felt "punished for complaining[,] like it was an attack on [her] again. You go to FFD. They are doing something...just another superficial investigation." (Plaintiff's Joint Opposition # 108 at 24, quoting II: 86) Basically, the plaintiff argues that the FFD was ordered because of the Postal Service's desire to make Bell look like a problem and that it was reasonable for her to perceive this as a form of punishment. (# 108 at 21) She observes that the FFD was a psychological exam designed to determine if she is "mentally unfit" to work. Bell claims that the FFD was essentially a preemptive strike undertaken to discredit her. (# 108 at 5–6)

None of the cases upon which the defendant relies stand for the proposition that, as a general matter, sending an employee for an FFD cannot serve as the basis for a retaliation claim. In *Frankel v. United States Postal Service*, summary judgment was denied as to the FMLA and Title VII retaliation claims which challenged the order to submit to an FFD. Even in the context of the discrimination claim on which summary judgment was granted, it was not determined that the FFD was not an adverse action. Rather, the Court found that the plaintiff failed to show a causal connection between the protected activity and the challenged actions (including an FFD). *Frankel*, 96 F.Supp.2d 19, 27–28 (D.Mass.2000).

The defendant's reliance on other cases is similarly misplaced. See *Schoffstall v. Henderson*, 223 F.3d 818, 825 (8th Cir. 2000) (did not hold that ordering an FFD could not be the basis for a retaliation claim, but only that the specific facts of the case did not support that finding); *Vislisel v. Turnage*, 930 F.2d 9, 10 (8th Cir.1991) (summary judgment upheld because of failure to show a causal connection be-

tween the FFD and the plaintiff's discrimination complaint); *Campbell v. Prince George's County Maryland*, 2001 WL 706039 at *6 (D.Md. 2001) (found that the plaintiff had established her prima facie case of retaliation and that it is a question for the trier of fact to decide whether an FFD was an adverse employment action considering, inter alia, the emotional distress it may cause); *Jones v. Billington*, 12 F.Supp.2d 1, 9, 14–15 (D.D.C.1997) (it was "assume[d] that a request for a fitness for duty examination is an employment action covered by Title VII." As to the FFD, summary judgment on the retaliation claim was granted because plaintiff failed to connect the FFD causally to his protected activity or show that defendant's reason for requesting it was pretext). In sum, an FFD can constitute an adverse personnel action and the jury had a sufficient evidentiary basis upon which to conclude that it was in this case.

*2. Was it reasonable for the jury to conclude that the plaintiff filed her EEO complaint in good faith?*

 The defendant claims to be entitled to judgment as a matter of law because the plaintiff failed to establish by a preponderance of the evidence that her EEO complaint was based on a reasonable belief that she had been the victim of racial and/or sexual harassment. (# 101 at 11) Regardless of whether any of the conduct that the plaintiff listed in her EEO complaint was prohibited under Title VII, "an employee's reasonable belief that it crosses the line suffices, as long as the complainant communicates that belief to the employer in good faith." *Higgins v. New Balance*, 194 F.3d 252, 262 (1st Cir.1999) (citations omitted). So, the issue is to be decided on the basis of a subjective inquiry into whether the plaintiff believed she was the victim of discrimination, not whether

the defendant's conduct about which the plaintiff complained was in fact illegal.

The defendant contends that Bell's complaint regarding the March 15th incident did not describe "race or sex-based discrimination" and that she failed to offer corroborating evidence of her sexual and racial harassment claims or that such harassment was the cause of her absences from work. (# 101 at 8) In her brief, Bell proffers several examples of conduct about which she complained that could have led the jury to conclude that she believed she was the victim of race and gender discrimination. (# 108 at 13–15) Bell asserts that when she went to EEO she told them about "everything," including allegations that she had continually been the victim of "fat black woman type jokes" and comments such as "nigger" and "F——ing Whore" in the workplace. (# 108 at 15, 17–19) She claims that she complained about the abuse to her supervisor several times and he just told her to ignore the comments. (# 108 at 11 citing II: 39) Indeed the plaintiff alleges that she was wearing headphones on the day she missed the call concerning her son's accident in order to tune out this pervasive verbal harassment in the workplace. (# 108 at 15 citing II: 54)

Again, it is not for the Court to second guess the jury's credibility assessment, but only to determine if there was sufficient evidence for a reasonable jury to come to that conclusion. See generally *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The plaintiff presented evidence that her EEO complaint was ultimately triggered by the events of March 15, but that it was also a response to what she reasonably believed was a long history of racial and sexual

harassment at the Post Office. Based on Bell's testimony as to what she had endured in the nature of racial and sexual harassment over the years and the inadequate response of management, the jury could have reasonably concluded that Bell believed in good faith that the March 15th incident was more of the same.

*3. Is there sufficient evidence to satisfy the plaintiff's initial burden of showing a causal connection between the EEO complaint and the three adverse personnel actions that followed?* [4]

■■ The issue is whether the jury, on the evidence taken in the light most favorable to Bell, could find that the adverse personnel actions were taken in retaliation for her having filed her EEO complaint. As a practical matter, employers typically do not explicitly declare their intentions to discriminate or retaliate against an employee for engaging in Title VII protected activity. "Therefore, generally the plaintiff-employee must make do with circumstantial evidence, leaving it to the jury whether to infer from the nature of the materially adverse employment conditions that the defendant-employer harbored a retaliatory animus." *Simas v. First Citizens' Federal Credit Union*, 170 F.3d 37, 48 (1st Cir.1999). Keeping in mind that the jury believed Bell's testimony, the evidence, viewed through the Rule 50(b) lens, is sufficient to support the verdict.

■ For example, Bell contends that even with her notable record for absenteeism, never before had she been sent for an FFD. Within days of going to the EEO, she was being ordered to submit to a psychological exam. Causation can generally be established by making an inference based on the timing of events. " 'One way

---

4. Again, the case having been fully tried and a jury verdict rendered, this is not the juncture at which to examine the sufficiency of the plaintiff's prima facie case. *Alvarez–Fonseca*, 152 F.3d at 26; *Sanchez*, 37 F.3d at 720.

of showing causation is by establishing that the employer's knowledge of the protected activity was close in time to the employer's adverse action." ' *Frankel*, 96 F.Supp.2d at 24 (quoting *Wyatt v. City of Boston*, 35 F.3d 13, 16 (1st Cir.1994)). So, temporal proximity alone could be enough evidence of causation to establish a prima facie case of retaliation. It is sufficient in circumstances, such as this, where the action is taken "very close" in time to the protected activity. *Clark County School District v. Breeden*, 532 U.S. 268, 273–274, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (temporal proximity alone was insufficient to prove causation because the adverse action occurred twenty months later). Of course, the closer the adverse action is to the protected activity, the stronger the inference of causation. Here, where the adverse action occurred only days after the employer learned of the protected activity it appears that a causal connection could reasonably be inferred.

Although only the FFD has been specifically discussed, these three actions cannot be considered in isolation. They were ordered by the same supervisor (Mr. Breen) and were a series of actions, beginning with an FFD, ordered just days after the plaintiff filed with EEO.

*4. Did the plaintiff satisfy her burden of proof when the burden shifted back to her to show that the reasons offered by the Postal Service for the three personnel actions were pretextual?*

██ Again, the defendant argues the prima facie case issue which is not germane at this stage of the proceedings. The defendant claims that the plaintiff did not offer sufficient evidence upon which a reasonable jury could have found that the reason stated by the Postal Service for ordering an FFD was pretextual. This argument completely ignores the plain fact that the jury believed Bell's testimony and

disbelieved that of the Postal Service officials who posited the nondiscriminatory reason for the personnel actions. If a plaintiff offers evidence from which the jury could disbelieve that the asserted non-discriminatory reason was the true reason for the actions taken, there is no necessity that the plaintiff produce anything more. As the Supreme Court has written, ". . . it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves*, 530 U.S. at 147, 120 S.Ct. 2097.

The defendant takes the position that the evidence he offered established that the FFD was scheduled in response to the plaintiff's complaints of disabling work-related stress. The jury need not have credited this evidence, however; indeed, it is clear from the verdict that they did not.

For example, it was shown that Bell had a long history of work-related stress and absenteeism during her nine years of Postal Service employment that proceeded her EEO complaint. The plaintiff argues that retaliatory animus is evidenced by that fact that it was not until Bell engaged in the protected activity that the Postal Service decided to take action and initiate a series of adverse actions. Although Potter maintained that the 14–day suspension and Notice of Removal were consequences of Bell's alleged unexplained absences from work, the plaintiff notes that she had been in a state of "equilibrium" with her employer with regard to absenteeism until she filed a complaint with EEO in March of 1997. (# 108 at 29) The determination as to whether the defendant's motive and intent were really retaliation is left to the jury in cases such as these because "proof is generally based on inferences that must be drawn, rather than on the proverbial 'smoking gun.'" *Rossy v. Roche Products Inc.*, 880 F.2d 621, 624 (1st Cir.1989). If,

on the evidence they viewed as credible, the jurors could disbelieve the testimony by defendant's witnesses as to why the Postal Service took the actions it did, then the verdict must stand.

In sum, from the totality of the evidence, both direct and circumstantial, taken in the light most favorable to the plaintiff, the jury could have found the following:

a. Bell's testimony was credible and the testimony of Mr. Breen and the other Postal Service officials who testified as to the reasons personnel actions were taken against Bell were not credible.[5]

b. Bell had been subject to a long history of racial and sexual harassment at her employment.

c. Bell's supervisors, most especially Mr. Breen, neglected or refused to deal with the long-standing problem of the sexual and racial harassment of Bell in any effective way.

d. Bell, based on (a) and (b), believed, in good faith, that what happened on March 15th were further acts which were motivated by her race and sex.

e. Bell told Mr. Breen that she had filed the EEO complaint.

f. Immediately thereafter Mr. Breen commenced the first adverse personnel action, followed in succession by the second and third.

g. Mr. Breen took these actions in retaliation for Bell having filed the EEO complaint.

■ It follows that Potter's motion for judgment as a matter of law must be denied. Any other result would require the Court to overturn the jury's credibility determinations, which, as the Supreme Court has stated, is improper when ruling on a Rule 50 motion. *Reeves*, 530 U.S. at 150–1, 120 S.Ct. 2097 citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## IV. THE LAW—RULE 59 MOTION

■ Rule 59(a), Fed.R.Civ.P., provides that "[a] new trial may be granted...on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." It is firmly within the trial court's discretion to grant a motion for a new trial. *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 36, 101 S.Ct. 188, 66 L.Ed.2d 193 (1980). A new trial may be granted if the clear weight of the evidence does not support the verdict. *Sheils Title Co., Inc. v. Commonwealth Land Title Ins. Co.*, 184 F.3d 10, 19 (1st Cir.1999); *Kearns v. Keystone Shipping Co.*, 863 F.2d 177, 181 (1st Cir.1988). Moreover, a judge may order a new trial if the verdict " 'will result in a clear miscarriage of justice.' " *Puerto Rico Aqueduct & Sewer Auth. v. Constructora Lluch, Inc.*, 169 F.3d 68, 77 (1st Cir. 1999) quoting *Phav v. Trueblood, Inc.*, 915 F.2d 764, 766 (1st Cir.1990). An excessive award of damages is also grounds for a new trial. *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 433, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). However, deference must be accorded to a jury's verdict; it should not be overturned except "under most compelling of circumstances" where it is seriously erroneous. *Flores–Suarez v. Turabo Medical Center*, 165 F.Supp.2d 79, 85 (D.P.R.2001) (citing *Ve-*

---

5. Even though the Court "...should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Reeves,* 530 U.S. at 151, 120 S.Ct. 2097 (citation omitted). The jury was clearly not "required" to believe the testimony of Mr. Breen.

*lazquez v. Figueroa–Gomez*, 996 F.2d 425, 427 (1st Cir.1993)).

## V. DISCUSSION—RULE 59 MOTION

Defendant argues that no reasonable jury could have found that the adverse personnel actions taken by the Postal Service were motivated by a desire to retaliate against the plaintiff for filing an EEO complaint. Therefore Potter requests that judgment as a matter of law or a new trial be granted in order to avoid a miscarriage of justice. Again, the defendant must meet a high standard to persuade the Court that judgment should be granted as a matter of law. This motion can only be granted "if the evidence, viewed from the perspective most favorable to the [plaintiff], is so one-sided that the [defendant] is plainly entitled to judgment, for reasonable minds could not differ as to the outcome." *FHS Properties Limited Partnership v. BC Associates*, 175 F.3d 81, 85 (1st Cir.1999) (quoting *Gibson v. City of Cranston*, 37 F.3d 731, 735 (1st Cir.1994)).

As the discussion regarding the Rule 50(b) motion indicates, this is not such a case. The jury believed Bell's testimony; it was within their province to do so. In deciding a Rule 59 motion, the Court cannot make its own credibility judgments and substitute those for the judgments of the jury. Yet this is precisely what the defendant asks the Court to do. The Rule 59 motion, at least as to liability, is without merit.

## VI. CONCLUSION AND ORDER

For the reasons stated it is ORDERED that Defendants' (sic) Motion For Judgment As A Matter Of Law Or In The Alternative For A New Trial (# 84) be, and the same hereby is, DENIED.