# United States Court of Appeals
## For the First Circuit

No. 05-1659

HÉCTOR A. RIVERA-GARCÍA; DELMA QUIÑONES;
CONJUGAL PARTNERSHIP RIVERA-QUIÑONES,

Plaintiffs, Appellants,

v.

SISTEMA UNIVERSITARIO ANA G. MÉNDEZ;
COLEGIO UNIVERSITARIO DEL ESTE;
ALBERTO MALDONADO, in his official capacity as
Chancellor of the Colegio Universitario del Este,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Boudin, Chief Judge,
Selya and Lynch, Circuit Judges.

Héctor J. Benítez Arraiza, with whom Llovet Zurinaga & López,
P.S.C. was on brief, for appellants.
José E. De La Cruz Skerrett, with whom De La Cruz Skerrett Law
Office, PSC was on brief, for appellees.

March 22, 2006

**PER CURIAM**.  Professor Héctor Rivera-García ("Rivera") was terminated on August 2, 1999 from his positions as Director of the Department of Liberal Arts and faculty member at the Colegio Universitario del Este ("University"), one of three private universities comprising the Sistema Universitario Ana G. Méndez (SUAGM).  Rivera was terminated after a female secretary in his Department filed a sexual harassment complaint against him and a subsequent investigation by the University's administration concluded that he had engaged in a pattern of sexual harassment that included not only harassment of the complainant, but also inappropriate comments directed toward at least two female professors.

Rivera, together with his wife and conjugal partnership, brought suit against the University, SUAGM, and Alberto Maldonado, the University Chancellor, among others, challenging his termination from employment and alleging that he was a victim of disability discrimination, in violation of, inter alia, the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq., the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Civil Rights Act of 1991, 42 U.S.C. § 1981(a), and Puerto Rico law. Rivera, who suffered polio as a child, has difficulty walking.  For purposes of this opinion, we assume arguendo that he is disabled within the meaning of the ADA.

The district court entered summary judgment for defendants on the ADA claim and related federal claims,[1] dismissed the federal claims against the individual defendants in their personal capacities, and, declining to exercise pendent jurisdiction, dismissed the state claims without prejudice.[2] The district court originally entered summary judgment on the ADA claim on the reasoning that plaintiff had not made the threshold showing that he was disabled or regarded as disabled -- that is, he had not shown he suffered from a "substantial" limitation on his ability to walk. See 42 U.S.C. § 12102(2)(A) (defining "disability" as "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual"); see also Calef v. Gillette Co., 322 F.3d 75, 83-84 (1st Cir. 2003).

Plaintiffs filed a motion for reconsideration, which the court construed as a motion to alter judgment. See Fed. R. Civ. P. 59(e). In a thoughtful opinion denying the motion for reconsideration, the court supplemented its initial reasoning as to summary judgment. It added the ground that even assuming Rivera was disabled, plaintiffs still had not proffered sufficient evidence to show that the defendants' articulated reason for

[1]    The court noted that the claims under the Civil Rights Acts of 1964 and 1991 were linked to a violation of the ADA, and that dismissal on summary judgment of Rivera's ADA claim would amount to a dismissal of his remaining federal claims.

[2]    Plaintiffs do not appeal the court's dismissal of the defendants in their individual capacities or of the state claims.

-3-

terminating Rivera -- that he had violated SUAGM's sexual harassment policy -- was a pretext and that the true reason was disability discrimination.

Plaintiffs appeal both from the court's summary judgment order and from the court's denial of their Rule 59(e) motion. We review the former determination de novo, see Colburn v. Parker Hannifin/Nichols Portland Div., 429 F.3d 325, 329 (1st Cir. 2005), and the latter for abuse of discretion, see Arrieta-Colon v. Wal-Mart P.R., Inc., 434 F.3d 75, 89 (1st Cir. 2006).

In analyzing plaintiffs' ADA claim, we employ, as did the parties and the district court, a modified version of the framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Within this framework, plaintiffs must ultimately present enough evidence to create a material issue of fact that defendants' non-discriminatory justification for terminating Rivera -- that he had committed sexual harassment -- is mere pretext and that the actual reason for the adverse employment action was disability discrimination. See Tobin v. Liberty Mut. Ins. Co., 433 F.3d 100, 104-05 (1st Cir. 2005). Plaintiffs make three arguments to this effect.

Their main argument is that the sexual harassment investigation was a sham designed to get rid of Rivera for other reasons. In support of this theory, plaintiffs allege: (1) that when Chancellor Maldonado first informed Rivera that a complaint

-4-

had been filed against him, the Chancellor suggested to Rivera that he might want to resign; (2) that the University denied Rivera procedural protections during the course of the sexual harassment investigation; and (3) that the University terminated Rivera even though lesser sanctions were available. The argument fails.

To begin, the Chancellor's statement is insufficient to permit an inference that the sexual harassment finding was a pretext; it is equally reasonable to view the statement as practical advice to Rivera following a credible claim of harassment by an employee.

The arguments Rivera makes of procedural irregularities take license with -- and are contradicted by -- the record. We will assume in Rivera's favor that a kangaroo proceeding, devoid of any fairness, to evaluate a trumped-up sexual harassment charge could, in an appropriate case, be shown to have produced a reason for termination of employment that was a pretext. The record shows that this is not what happened here: Rivera was permitted to respond to the charges. The complainant and two female professors, who in the course of the investigation revealed that Rivera had also made inappropriate comments to them, testified of their own knowledge about what Rivera had done. And Rivera's proffered character witnesses, who had no personal knowledge of any of the allegedly harassing incidents, were understandably excluded. There is no basis in the evidence for Rivera's claim that the

investigation procedures were so fundamentally unfair as to cast doubt on the legitimacy of the outcome. Furthermore, even if there had been mistakes as to procedure, and we see none, there is absolutely no evidence that any errors were motivated by discrimination against the disabled.

That other disciplinary measures for sexual harassment were available does not make defendants' decision to terminate Rivera a form of discrimination. Plaintiffs admitted at oral argument that Rivera's employment could legally be terminated if he was found to have engaged in sexual harassment; indeed, SUAGM's sexual harassment policy plainly provided that "[a]ny person who engages in behavior constituting sexual harassment . . . will be subject to severe penalties, including dismissal . . . from the institution." Moreover, Rivera has pointed to no evidence indicating that defendants' choice of sanctions was motivated by discriminatory animus.

Plaintiffs' secondary argument in support of their theory that the sexual harassment investigation was mere pretext for disability discrimination is the allegation that the University failed to satisfy Rivera's earlier request for a reasonable accommodation. Rivera alleges that he had sent a letter to Chancellor Maldonado, requesting that meetings not be held on the second floor of a building that had no elevator; Maldonado denies ever having received this letter. We agree with the district court

that Rivera did not provide sufficient evidence of his request or of the University's purported failure to respond to such a request.[3]

Finally, plaintiffs attempt to undermine the conclusion that Rivera's employment was terminated because he engaged in sexual harassment by pointing to the fact that Rivera was one of three candidates considered in the fall of 1998 for the position of Vice Chancellor of Academic Affairs at the University and did not get the position; the University hired another candidate, and when that candidate resigned, the University appointed someone else who was not among the original pool of three.

Even if Rivera did not get the Vice Chancellorship because of disability discrimination, a claim Rivera made only after his employment was terminated almost a year later, that is not sufficient to raise an issue of material fact that he was fired for any reason other than the sexual harassment. In any event, there is no evidence that he was denied employment opportunities

---

[3]    With their motion for reconsideration, plaintiffs attempted to submit the letter Rivera allegedly sent to Maldonado. The court declined to consider the letter, because plaintiffs failed to submit it before judgment was entered. To the extent that plaintiffs challenge this ruling on appeal, we hold that there was no abuse of discretion in the district court's rejection of the letter and of plaintiffs' motion to alter judgment on account of a belated evidentiary proffer, especially where that evidence was previously available and should have been submitted to the court for timely consideration. See Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997) ("[Rule 59(e)] . . . does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment.").

due to disability discrimination. When another candidate was selected as Vice Chancellor, the University did not turn Rivera away. Instead, knowing of his difficulty in walking, the University hired him as a faculty member and as Director of the Department of Liberal Arts, presenting him with a one-year contract, beginning August 15, 1998 and ending July 31, 1999. Further, in a letter dated May 28, 1999, mere days before the sexual harassment allegation arose on June 1, 1999, the University informed Rivera that it wished to extend his faculty appointment for another two years, through August 2001. Nothing in the record supports an inference that the reason for termination of Rivera's employment was anything other than his own conduct in sexually harassing women.[4]

Judgment for defendants is **affirmed**. Costs are awarded to defendants.

---

[4] We construe plaintiffs' allegations that the University discriminated against Rivera by refusing to appoint him to the Vice Chancellorship and by failing to provide him with reasonable accommodations as arguments in support of the wrongful discharge claim, and not as independent grounds for relief under the ADA. To the extent that plaintiffs are advancing independent disparate impact and failure to accommodate claims, their arguments are desultory at best and amount to waiver. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (holding that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived," because "a litigant has an obligation to spell out its arguments squarely and distinctly" (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988) (internal quotation marks omitted))).