Judy COLON, et al., Plaintiffs

v.

## SAN JUAN MARRIOTT RESORT AND STELLARIS CASINO, Defendant.

### Civil No. 06–1253 (JAG).

United States District Court,
D. Puerto Rico.

May 1, 2008.

Anibal Escanellas–Rivera, Escanellas & Juan, San Juan, PR, for Plaintiff.

Radames A. Torruella–Del–Valle, Patricia M. Marvez–Valiente, McConnell Valdes, San Juan, PR, for Defendant.

## AMENDED OPINION AND ORDER NUNC PRO TUNC

JAY A. GARCIA–GREGORY, District Judge.

On March 9, 2006, Judy Colon, Harry Marquez and the conjugal partnership Marquez–Colon ("plaintiffs") filed this action against San Juan Marriott Resort and Stellaris Casino ("defendant"). Plaintiffs allege that defendant's actions violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"); the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); the Civil Rights Act of 1964 and the Civil Rights Act of 1991, 42 U.S.C. § 2000e–5 and 42 U.S.C. § 1331 ("Title VII"); Puerto Rico Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29, § 146 *et seq.* (2006) ("Law 100"); Puer-

to Rico Law No. 44 of July 2, 1985, P.R. Laws Ann. tit 1, § 501 *et seq.* (2006) ("Law 44"); Puerto Rico Law No. 80 of May 30, 1976, P.R. Laws Ann. tit. 29, § 185a *et seq.* (2006) ("Law 80"); and article 1802 of the Puerto Rico Civil Code, P.R. Laws Ann. tit 31, § 5141 (2006) ("Article 1802").

Pending before the Court is defendant's Motion for Summary Judgment, filed on May 8, 2007 (Docket Nos. 29, 30); plaintiffs' opposition filed on June 25, 2007 (Docket No. 42); defendant's reply (Docket Nos. 49, 50) and plaintiffs' sur-reply (Docket No. 56). Also pending before the Court is defendant's motion to strike supporting documents filed by plaintiffs with their opposition to defendant's motion for summary judgment (Docket No. 46), plaintiffs' response thereto (Docket Nos. 57, 59) and defendant's reply (Docket No. 62). For the reasons set forth below, the Court GRANTS in PART and DENIES in PART the Motion to Strike (Docket No. 46), and GRANTS in PART and DENIES in PART the Motion for Summary Judgment (Docket No. 29).

## FACTUAL BACKGROUND

Co-plaintiff Judy Colon ("Colon") was born on April 16, 1952. Colon married Harry Marquez ("Marquez"), an individual diagnosed with chronic paranoid schizophrenia, a disability which Colon states rendered him unable to work. Allegedly, Marquez was declared totally disabled in September 1999 by the Social Security Administration.

Colon began working for the San Juan Marriott Resort and Stellaris Casino ("Marriott") on December 8, 1994 as a server. In 1997, Colon was promoted to the position of "Captain." As Captain, Colon was not a supervisor; she did not evaluate employees nor issue written warnings to them, but instead had to report any situation to the supervisor on shift. However, her job was to make sure

that the tables were waited on and to provide assistance to the supervisor. As Captain, Colon could not wait on tables herself, but if waiters needed help, she would do so. Additionally, on those occasions when there was a supervisor who was absent, Colon, as Captain, would make sure the guests were served and the tables were waited on. Colon's supervisors were Omar Rivera ("Rivera"), Michael Rios ("Rios"), Jessica Morales ("Morales") and Hassan Kaan ("Kaan"). According to Colon, all her supervisors knew about her husband's disability. She claims that they constantly made discriminatory comments about his disability as well as about her age.

In January 2005, Colon requested a three (3) week Personal Leave from one of her supervisors, Morales. Colon was eligible to request a Personal Leave without pay of up to four (4) weeks depending on the amount of time authorized by the supervisor. Colon knew that her supervisor had the discretion to give her two (2) or three (3) weeks of leave without pay as Personal Leave. In order to use Personal Leave, as well as other types of leave, Colon had to request it from her supervisor and the Human Resources Department and await their approval. Colon could not go on leave without this approval. In order to take Personal Leave, she had to fill out the proper documentation. Colon needed the time to take care of her husband, who had to be hospitalized.

While on her three (3) week Personal Leave, Colon spoke to Morales and requested an additional two (2) weeks of Personal Leave. Colon needed more time to continue taking care of her husband. Morales told Colon to report to the Human Resources Department. Colon did not report to the Human Resources Department

on the day Jessica Morales told her to report to the Human Resources Department nor on the following day. Colon was not able to report to Human Resources on the day Morales asked her to because she could not find anybody to take care of her husband and because she had car trouble. Colon contacted Ms. Peggy Rosa and informed her that she could not attend the meeting at the Human Resources Department but would make the arrangements necessary to go as soon as possible. Colon went to Human Resources on March 7, 2005.

Colon alleges that in addition to Morales, she also asked another supervisor, Kaan, for the additional two (2) weeks of Personal Leave. According to Colon, Kaan approved the additional leave and told Colon to send her husband's medical certificate to the Human Resources Department.[1] The day after allegedly speaking with Kaan, Colon sent the medical certificate and a court order to the Human Resources Department with her son. Colon's son handed the documents personally to Elizabeth Albelo ("Albelo"), from the Human Resources Department.

On March 7, 2005, Colon went to the Human Resources Department and met with Albelo. The Record of Conversation contains a summary of Colon's conversation with Albelo on that day. According to Colon, its content is correct although it does not reflect the entire conversation. Colon, however, did not write any objection to the Record of Conversation on the document. The Record of Conversation shows that during the meeting, Albelo told Colon that her failure to report back work on time was considered job abandonment. During that same conversation with Albelo on March 7, 2005, Colon asked Albelo for more time off because she had to leave to

---

1. Whether Colon asked Kaan for the additional leave and whether he granted it are facts that are in controversy.

visit her daughter in Germany. Colon was instructed by Albelo to report to the Human Resources Department after she returned from her trip. Colon alleges that during her conversation with Albelo, Albelo asked about her disabled husband and told her that she would certainly have to take more time off in order to attend to him. Colon had to take care of her husband during this time off; she did not go on the trip. Also during the March 7, 2005 meeting, Colon prepared her own written statement freely and voluntarily. In that statement, Colon did not mention that she had to take care of her husband or that her husband was ill or hospitalized. On March 22, 2005, Colon returned to work. On that day, she was terminated. Colon does not know who substituted her in her position as Captain after her dismissal.

On March 21, 2004, Colon received a copy of the Marriott employee manual. Colon was aware that if an employee is absent for more than 2 days, the employee was required to present a written doctor's note to confirm the illness and that failure to report or call in to work for 3 consecutive days would be considered job abandonment or voluntary resignation. Colon is aware and had knowledge that if an employee failed to report to work for 3 consecutive days, without calling or notifying his/her supervisor/manager as to the reason for their absenteeism, said act would be considered sufficient cause for termination. Colon is aware and had knowledge of Marriott's progressive discipline policy which provided that an employee may be terminated for failing to report to work for 3 consecutive days during any 3 consecutive months without authorization. Colon is aware and had knowledge that an employee may be discharged without any prior warning if said employee commits certain acts which include failing to report to work for 3 consecutive days during any 3 consecutive months without authorization. Colon is

aware and had knowledge of Marriott's equal employment opportunity policy. Colon is aware and had knowledge of Marriott's Peer Review system, which allowed an employee who was dissatisfied with a disciplinary action to be heard by a panel whose members were selected by him/her. That panel would then determine if it agrees or disagrees with the disciplinary action that was administered. Colon was familiar with the Peer Review process and on several occasions participated as a panelist during peer reviews for other employees. However, Colon did not request an opportunity to seek Peer Review regarding Marriott's decision to terminate her. She alleges it was not available because Albelo's decision was final.

Throughout her entire employment with Marriott, Colon received several benefits including vacation leave, sick leave, among other leaves, medical insurance and a retirement plan. Colon received salary increases every year. Colon received a salary increase in 2004. Colon reached the top of her salary scale on several occasions. At the time Colon stopped working for Marriott, she was at the top of the salary scale and her salary was higher than the other waiters' salaries. Throughout her employment with Marriott and whenever applicable, Colon received compensation or any excess sick leave.

Colon alleges that during the time she was employed by Marriott, she was constantly subjected to discriminatory comments by her supervisors regarding her age and her disabled husband. Among other comments, she states that she was called "old," that her husband was called "crazy." Colon complained to Luis Maria Acuna ("Acuna"), a manager in the Human Resources Department, about this behavior.

During her deposition, Colon alleged that she applied for a supervisor position but that she was never considered. How-

ever, Colon admitted that she only said she was interested in a supervisor position when such a position would become available. Colon did not recall the year she applied for the position. Colon did not submit her resume, nor job application when she allegedly applied for the supervisor position. During Colon's exit interview she filled out an evaluation form regarding her experience working for Marriott. Under the categories of employment conditions, salary and compensation, benefits, promotional opportunities, training and equipment, Colon rated each category as excellent. However, Colon rated the rules and regulations of Marriott as bad because they were not applied equally amongst employees.

## DISCUSSION

### A. Standard of Review

The Court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 states, in its pertinent part, that the Court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 52 (1st Cir.2000). The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once a properly supported motion has been presented before the Court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the Court's denial of the motion for summary judgment. For issues where the opposing party bears the ultimate burden of proof, the party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute. *See Suarez v. Pueblo International, Inc.,* 229 F.3d 49, 52 (1st Cir.2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine." "Material" means that a contested fact has the potential to change the outcome of the suit under governing law. The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient "to defeat a properly supported motion for summary judgment." *Id.* at 252, 106 S.Ct. 2505. It is therefore necessary that "a party opposing summary judgment must 'present definite, competent evidence to rebut the motion.'" *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 581 (1st Cir.1994) (quoting *Mesnick v. General Elec. Co.,* 950 F.2d 816, 822 (1st Cir.1991), cert. denied, 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992)).

In making this assessment, the Court "must view the entire record in the light most hospitable to the party opposing summary judgement, indulging in all reasonable inferences in that party's favor." *Griggs–Ryan v. Smith,* 904 F.2d 112, 115 (1st Cir.1990). The Court may safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990).

### B. Motion to Strike

We first address the issues brought forth by the parties regarding the evidence

that should or should not be considered by the Court in its review of the summary judgment motion. Defendant moved to strike plaintiffs' statement of contested and uncontested facts and to deem admitted all the facts in defendant's statement of material facts. The Court has reviewed the parties' filings and finds as follows.

█ Plaintiffs have failed to comply with Local Rule 56 in that they have not submitted an opposing statement of material facts with two separate sections, one denying, admitting or qualifying defendant's proposed uncontested facts and another with their own additional facts. Plaintiffs have submitted a statement which contains both, responses to defendant's proposed facts and new facts, in no particular order. However, the Court is inclined to be lenient with plaintiffs at this point and will not strike their motion in opposition to summary judgment on these grounds.

Defendant's arguments regarding plaintiffs' failure to comply with the requirement of denying, admitting or qualifying defendant's proposed uncontested facts; plaintiffs' failure to properly controvert several of defendant's proposed facts; and plaintiffs' denial of specific facts with citations to Colon's affidavit which contradict statements given by Colon in her deposition without any explanation about the inconsistencies will be addressed as they become relevant throughout this Opinion and Order.

## C. ADA Claims

█ ADA's "association provision" protects qualified individuals from employment discrimination based on the "known disability of an individual with whom the qualified individual is known to have a

relationship or association." 42 U.S.C. § 12112(b)(4). The purpose of this provision was "to protect qualified individuals from adverse job actions based on 'unfounded stereotypes and assumptions' arising from the employees' relationships with particular disabled persons." *Oliveras–Sifre v. Puerto Rico Dept. of Health*, 214 F.3d 23, 26 (1st Cir.2000) (*citing Barker v. International Paper Co.*, 993 F.Supp. 10, 15 (D.Me.1998); *Den Hartog v. Wasatch Academy*, 129 F.3d 1076, 1081–85 (10th Cir.1997)). "A family relationship is the paradigmatic example of a 'relationship' under the association provision of the ADA." *Den Hartog*, 129 F.3d at 1082.

█ In analyzing an ADA claim, courts should employ a modified version of the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Rivera–Garcia v. Sistema Universitario Ana G. Mendez*, 442 F.3d 3, 5 (1st Cir.2006). Within this framework, the plaintiff bears the burden of presenting enough evidence to create a material issue of fact that defendant's non-discriminatory justification for the adverse employment action is mere pretext and that the actual reason for the adverse employment action was disability discrimination. *Id.* (*citing Tobin v. Liberty Mut. Ins. Co.*, 433 F.3d 100, 104–05 (1st Cir.2005)).

█ To establish a *prima facie* case under the ADA's association provision, a plaintiff must prove by a preponderance of the evidence: (1) that she was qualified for the job at the time of the adverse employment action; (2) that she was subjected to adverse employment action; (3) that her employer knew, at the time of the adverse employment action, that she had a relative or associate with at disability;[2] and (4) that the adverse employment action oc-

---

**2.** A disability under the ADA is a physical or mental impairment that substantially limits one or more of a person's major life activities; a record of such an impairment; or being regarded as having such an impairment. 42

curred under circumstances raising a reasonable inference that the disability of the relative or associate was a determining factor in the employer's decision. *Sifre v. Department of Health,* 38 F.Supp.2d 91, 100 (D.P.R.1999), *aff'd,* 214 F.3d 23 (1st Cir.2000).

In its Motion for Summary Judgment, defendant first argues that plaintiffs failed to establish a *prima facie* case of discrimination under ADA's association provision. Although Marriott concedes that Colon was qualified for the job at the time of the adverse employment action and that she was subject to the adverse employment action of termination,[3] it sustains that plaintiffs did not prove the other two elements of a *prima facie* case under the ADA.

■ Defendant argues that it was not proven by plaintiffs that Marriott knew that Colon had an associate with a disability. Defendant states that this is evidenced by the fact that Colon merely states that she thinks she told her supervisor, Kaan, that her husband was emotionally ill but does not remember when she said this; that she admits she never gave Kaan or Morales a medical certificate concerning her husband's condition;[4] and that nowhere in the Record of Conversation prepared by Albelo about their meeting, nor in the declaration prepared by Colon after the meeting, is there mention of Colon's husband or of her husband's illness as the reason for her leave request. Defendant states that although plaintiffs allege that Colon sent her husband's medical certificate to Human Resources with her son, there is no evidence to prove that her son actually delivered the medical certificate nor of the content of the certificate. According to defendant, the sworn statement by Mario Medina, Colon's son, does not establish when in February 2005 he delivered the documents and in any case is insufficient because plaintiffs failed to produce a copy of the medical certificate to substantiate their claims.

Colon's sworn statement states that she told Rios, Rivera, Morales and Kaan about her husband's disability.[5] Defendant at-

U.S.C. § 12102(2)(A)-(C); *see also Santiago Clemente v. Executive Airlines,* 213 F.3d 25, 30 (1st Cir.2000). In order to determine whether plaintiff is disabled under the ADA, the Court must conduct a tripartite analysis. *Carroll v. Xerox Corp.,* 294 F.3d 231, 238 (1st Cir.2002); *Bragdon v. Abbott,* 524 U.S. 624, 631, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998). First, plaintiff must prove that he suffers from a physical or mental impairment. *Carroll,* 294 F.3d at 238. Second, the Court must evaluate the life activities affected by the impairment to determine if they constitute a "major" life activity. *Id.* Lastly, "tying the two statutory phrases together, we ask whether the impairment substantially limits the activity found to be a major life activity." *Lebron–Torres v. Whitehall Labs.,* 251 F.3d 236, 239–40 (1st Cir.2001); *see also Gelabert–Ladenheim v. American Airlines,* 252 F.3d 54, 55 (1st Cir.2001).

3. In addition to termination, plaintiffs argue that there were other adverse employment actions that were also taken against her be-

cause of Marquez's disability and Marriott's belief that his disability would continue to cause Colon to be absent from work and negatively affect her productivity and efficiency. The Court will consider these actions separately.

4. Colon alleges to have submitted to Morales and Kaan a medical certificate about her husband's health condition when she requested the initial three (3) week Personal Leave. This statement is contradictory to answers given to clear questions in Colon's deposition. Colon stated that she never gave either Morales or Kaan a medical certificate about her husband's condition. (*See* Defendant's Exh. 1, 158–59)(Docket No. 37).

5. Plaintiffs have submitted evidence sufficient to at a minimum, create an issue of material fact as to whether Colon's husband was disabled at the time of her employment at Marriott. Marquez is schizophrenic; Colon stated in her deposition that her husband was not able to work; working is a major life activity.

tempts to counter this by stating that it is testimony contradictory to Colon's deposition testimony. However, the fact that Colon did not deliver her husband's medical certificate to Morales or to Kaan does not mean that they did not know about her husband's disability. Moreover, the fact that Colon cannot remember exactly when she told Kaan about her husband's illness does not mean that he did not know about it. In the absence of evidence to properly controvert the statement that Colon told Rios, Rivera, Morales and Kaan about her husband's disability, a statement which is supported by affidavit and which is not contradictory to previous deposition testimony, the Court must deem this prong of the *prima facie* case proven.

■ As to the fourth prong of the *prima facie* case, defendant argues that plaintiffs did not prove that an adverse employment action occurred under circumstances raising a reasonable inference that the disability of Colon's husband was a determining factor in Marriott's decision. Marriott states that not only did it not know about Colon's husband's disability but there is evidence that Colon was told by Albelo that her acts constituted job abandonment and still, Colon insisted on taking further leave irrespective of Marriott's approval of the same. Defendant's arguments are not convincing in view of the fact that Colon has stated that during her conversation with Albelo on March 7, 2005, Albelo asked her about her husband's condition and about taking further leave to take care of him. Defendant does not contradict this, but instead points to the Record of Conversation which Colon stated was incomplete, albeit correct. These circumstances, taken in the light most favorable to plaintiffs, lead the Court to conclude that the adverse employment action occurred under circumstances raising a reasonable inference that the disability of Colon's husband was a determining factor. As such, plaintiffs have proven the last prong of the *prima facie* case.

Having plaintiffs met their burden as to the *prima facie* case, we move on to examine whether defendant has come forth with a valid non-discriminatory reason for the dismissal. Defendant states that its reason for dismissing Colon was that she "blatantly ignored the procedures to request and enjoy Personal Leave, failed to timely report back to work and ultimately abandoned her employment at Marriott." Furthermore, defendant states that "[w]hen plaintiff finally reported back to work on March 7, 2 weeks after her leave had expired, she disregarded Albelo's warning that no leave was approved, and took further unauthorized leave." [6] Defendant argues that this reason for dismissal is contained in the Record of Conversation between Albelo and Colon and is undisputed by Colon. It is defendant's contention that plaintiffs cannot establish that Marriott's reasons for terminating Colon were a pretext for discrimination because the people plaintiffs identify as those who called Colon's husband "crazy" were not involved nor had any participation in Colon's termination of employment. According to defendant, those comments were stray remarks by nondecision-makers.

■ Clearly, defendant has come forward with valid non-discriminatory reason for Colon's termination: she violated the procedures for requesting personal leave, took unauthorized personal leave,

---

**6.** It is not necessary to discuss the "further unauthorized leave," meaning the time Colon took off after the additional two (2) weeks and her meeting with Albelo, it is clear from the record before the Court that disciplinary action was contemplated after the two (2) weeks Colon allegedly took without authorization. In any case, there is a genuine controversy as to whether this additional leave was approved by Albelo.

failed to timely report to work and ultimately abandoned her employment. This reason must withstand plaintiffs' attack that it is pretextual. Defendant's side of the story is that while Colon was on a personal leave of three (3) weeks (a leave authorized by Morales), she asked Morales for an additional two (2) weeks and that Morales told her to report to Human Resources Department. Colon did not report to the Human Resources Department until March 7, 2005, after taking the two (2) weeks of leave that were never approved. On that day, Colon met with Albelo and signed a document which recorded the conversation had between them. Said document states that Colon understood that taking the two (2) weeks of unauthorized leave was considered job abandonment and that after she returned from a trip, she would report back to Human Resources to conclude the outcome of the job abandonment. Plaintiffs side of the story is, of course, different.

Plaintiffs state that Colon made the request for the additional two (2) week leave to both Morales and Kaan and that while Morales asked her to report to the Human Resources Department, Kaan approved her leave, ordering Colon to submit a copy of her husband's medical certificate to Human Resources. Colon sent the certificate with her son, who delivered it personally to Albelo. Colon then received a call from Morales, who told her to report to Human Resources on March 5, 2005. Colon could not attend the meeting on that day and called-in to explain the situation. Colon reported to Human Resources on March 7, 2005 and met with Albelo. Colon did not believe that her actions constituted job abandonment because she called-in. Plaintiffs argue that whether Kaan approved Colon's second personal leave request, whether Colon timely delivered to Marriott's Human Resources Department a copy of her husband's medical certificate and whether Colon reported to the Human Resources Department when she was ordered to do so by Morales are all key material facts in controversy.

A key element in determining whether defendant's proffered reason is pretextual is whether Colon's two (2) week extension of leave was approved or not. It is clear from the record that Morales did not approve her leave. However, it is unclear whether Kaan approved said request. In her deposition, Colon states that she spoke to Kaan about the additional two (2) week leave and that he asked her for a medical certification of her husband's illness. However, whether Kaan approved the additional leave was either not part of the deposition or if it was, that part of the deposition was not submitted to the Court. Accordingly, Colon's sworn statement that her leave of two (2) additional weeks was approved by Kaan does not contradict her deposition testimony. This was precisely defendant's argument when controverting plaintiff's proposed material fact that Kaan approved Colon's request for additional personal leave of two (2) weeks and informed her to send her husband's medical certificate to the Human Resources Department (Docket No. 42, Item 45). Defendant did not submit any evidence to specifically prove that Colon never requested Kaan the additional leave or that Kaan did not approve it. Defendant rests on the fact that Colon asked Morales for the leave and that Morales did not approve it. This creates a genuine issue as to whether Kaan approved Colon's additional two (2) week leave. Even if Colon signed a record of conversation which stated that she understood that the two (2) week absence constituted job abandonment, her deposition testimony shows that she did not consider that she had incurred in job abandonment because she called-in. With the facts before this Court, taken in the light most favorable to plaintiffs, we must conclude that there is an issue of fact as to

whether Kaan approved Colon's additional personal leave of two (2) weeks.

■■■ This conclusion, however, does not end our inquiry. Plaintiffs must show that the proffered reason is pretextual such that discriminatory animus can be inferred. *Gonzalez v. El Dia, Inc.,* 304 F.3d 63, 69 (1st Cir.2002). "It is not enough for a plaintiff to merely impugn the veracity of the employer's justification, [s]he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real [discriminatory] motive.'" *Mesnick,* 950 F.2d at 824 (*quoting Medina–Muñoz,* 896 F.2d at 9). In this case, plaintiffs have established a genuine issue as to whether Marriott's real motive was discrimination because of Colon's association with a disabled individual. In her affidavit and in her deposition, Colon stated that during her meeting with Albelo, they discussed Colon's husband's illness and that most probably she would have to take further leave to take care of him. Colon states that Albelo informed her that if she continued asking for leaves, she would be dismissed, but then made Colon believe that she could safely go on additional leave.

Although an employer is not obligated to accommodate an employee who has to take care of a relative with a disability through scheduling modifications, "the Interpretive Guidelines to the ADA provide that an employer may not make decisions based on the 'belie[f] that the [employee] would have to miss work' in order to take care of a disabled person." *Tyndall v. National Educ. Centers, Inc. of California,* 31 F.3d 209, 214 (4th Cir.1994) (*citing* 29 C.F.R. § 1630, App.). The fact that it has been cast into doubt whether or not Colon received approval of an additional two (2) week leave, coupled with the fact that there is a controversy as to whether the need for additional leave for Colon to take

care of her husband was a topic of conversation between Albelo and Colon, causes a genuine issue as to whether there was discriminatory animus behind Marriott's decision to terminate Colon. Precisely the fact that Marriott states that its reason for terminating Colon was job abandonment for having taken unauthorized leave, when Colon was under the impression that her leave had been granted, strengthens the Court's determination. Had the record clearly shown that Colon's dismissal was based on a record of extended absences caused by her need to take care of her husband and that she was put on notice that she could not take further leave, the result may have been different.

■■■ "Courts should exercise particular caution before granting summary judgment for employers on issues such a pretext, motive and intent." *Santiago–Ramos v. Centennial P.R. Wireless Corp.,* 217 F.3d 46, 55 (1st Cir.2000). However, "[i]f the non-moving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation, summary judgment may be appropriate even where intent is at issue." *Hodgens v. General Dynamics Corp.,* 144 F.3d 151, 167 (1st Cir.1998). In this case, plaintiffs' evidence consists of more than just conclusory allegations, improbable inferences, and unsupported speculation. Because the Court, with the record before it, cannot make a determination as to whether Albelo based her decision on an unfounded assumption that Colon would have to miss work in the future to take care of her husband, summary judgment as to plaintiffs' ADA claim of discriminatory dismissal must be denied.

■■■ In addition to termination, plaintiffs argue that there were other adverse employment actions motivated by Colon's association with a disabled individual. These were: never considering Colon for a

supervisory position while allowing younger and less experienced employees to occupy said position; demoting Colon from Captain to restaurant waiter; taking away from Colon her supervisory functions and duties; reducing Colon's working schedule and consequently her salary; and subjecting Colon to harassing and discriminatory comments.

Defendants have denied that any of these actions took place. However, plaintiffs have submitted sufficient evidence to at least create a genuine controversy as to whether these actions took place. There is evidence on the record that Colon's schedule at the time she was promoted to Captain was an eight (8) hour shift from 5:00 am to 1:30 pm and that because she was sent home early, her shift was reduced to five (5) hours. There is also evidence that as a result of said reduction in working hours, Colon's income (although not her hourly wage) decreased. Also, although defendants have submitted evidence that Colon remained in the position of Captain up until her termination, there is evidence on the record that functions particular to that position were taken away from Colon. As Captain, Colon supervised other waitresses, the food preparation and presentation; provided assistance to restaurant supervisors; and whenever a supervisor was absent, she would fill-in for them. As Captain, she was not allowed to wait on tables. Although Colon admitted that the position of Captain was not a supervisory position, this does not negate that her supervisory duties—in that she would overview other waiters' work without performing the duties of a waiter—could have

been taken away from her. Colon's "demotion" consists of being assigned to wait on tables and to serve customers, duties that she was not supposed to perform as Captain, and of having a restaurant key that as Captain she used to perform her functions and duties taken away. As to the allegation that Colon was passed over for promotion, defendant presented evidence to prove that Colon never formally asked for a promotion. Indeed, she only seems to have done so informally, but there does not seem to have been any formal process to request a promotion. Aside from negating that the adverse employment actions listed above took place, defendant does not discuss the issue further.[7]

All of the above listed adverse employment actions can be said to have occurred under circumstances raising a reasonable inference that the disability of Colon's husband was a determining factor in Colon's supervisors' decisions. Plaintiffs have submitted evidence that construed in the light most favorable to them, shows that these adverse employment actions were due to Colon's supervisors' belief that she was not reliable because she had to take care of her husband. The Court therefore deems the *prima facie* case as to these actions proven. Having defendant failed to articulate a legitimate non-discriminatory reason for these adverse employment actions, plaintiffs have met their burden and summary judgment on these claims is denied.

 The last remaining claim under the ADA is that of hostile work environment.[8] Defendant argues that the harass-

---

**7.** The Court notes that the fact that Colon stated in her deposition that she requested the promotion from an individual named Philip, while in her affidavit she states that she requested it from Acuna, does not create a relevant inconsistency. She alleges to have requested the promotion several times; to whom, is not particularly relevant in view of

the fact that there is no evidence on record of a specific procedure to be followed.

**8.** The claim of retaliation under the ADA (as well as the claim of retaliation under ADEA) is considered in a separate section (Section E) of this Opinion and Order.

ing and discriminatory comments, if at all made, were merely stray comments from non-decision makers. Moreover, defendant argues that the courts are yet to entertain a discussion of whether a claim for hostile work environment due to an association with a disabled person is cognizable.

 Assuming without deciding that a cause of action for harassment exists under the ADA, such cause of action requires that plaintiffs show that the harassment was "so severe or pervasive that it alters the conditions of the plaintiff's employment." *See Marrero v. Goya of Puerto Rico, Inc.*, 304 F.3d 7, 26 (1st Cir.2002). In making this determination, the Court "must consider all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Walton v. Mental Health Ass'n. of Southeastern Pennsylvania*, 168 F.3d 661, 667 (3rd Cir. 1999) (*quoting Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). In her affidavit, Colon states that her supervisors constantly said comments about her husband being crazy and told her that she would be dismissed if she took leave to take care of her husband. In her deposition, she testified that these comments were said "on numerous occasions," and "not frequently" but "quite a few times that it would bother me." This evidence is not sufficient to prove that the comments were so severe or pervasive that they altered the conditions of Colon's employment. As such, defendant is entitled to summary judgment on the ADA hostile environment claim.

### D. ADEA Claims

 The ADEA makes it unlawful for an employer to discriminate against any individual with respect to his/her terms and conditions of employment or to adversely affect his/her status as an employee, because of such individual's age. *See* 29 U.S.C. § 623(a). It is well-settled that to prevail in a wrongful discharge case under the ADEA, plaintiff bears the ultimate "burden of proving that ... he would not have been fired but for his age." *Vega v. Kodak Caribbean. Ltd.*, 3 F.3d 476, 478 (1st Cir.1993); *Shorette v. Rite Aid of Maine, Inc.*, 155 F.3d 8, 12 (1st Cir.1998); *Hidalgo v. Overseas Condado Ins. Agencies, Inc.*, 120 F.3d 328, 332 (1st Cir.1997). An employer may take an adverse action for any reason, fair or unfair, so long as the action is not motivated by an age-based discriminatory animus. *Hidalgo*, 120 F.3d at 337.

 When a plaintiff lacks direct evidence of discrimination, Courts apply the burden-shifting framework established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must first establish a *prima facie* case of age discrimination by demonstrating that (1) she is within the protected class (over the age of forty); (2) that her job performance was satisfactory and met her employer's legitimate expectations; (3) that she suffered an adverse employment action; and (4) that defendant sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills. *See Pueblo Int'l*, 229 F.3d at 53; *Mesnick v. General Electric Co.*, 950 F.2d 816, 823 (1st Cir.1991); *Flamand v. American Int'l Group, Inc.*, 876 F.Supp. 356, 368 (D.P.R. 1994). In the context of a reduction in force, the fourth prong requires instead that plaintiff prove that age was not treated neutrally in implementing the reduction in force, or younger individuals were retained in the same position. *Ruiz v. Posa-*

das de San Juan Associates, 124 F.3d 243, 247–8 (1st Cir.1997) (citing Woodman v. Haemonetics Corp., 51 F.3d 1087, 1091 (1st Cir.1995)).

 Establishing a prima facie case generates a rebuttable presumption of discrimination. While the burden of persuasion remains at all times with the plaintiff, the prima facie case shifts the burden of production to the employer, who must then articulate a legitimate non-discriminatory reason for the adverse employment action. See Mesnick, 950 F.2d at 823. "This entails only a burden of production, not a burden of persuasion; the task of proving discrimination remains the claimant's at all times." Id. (citing Texas Dept. Of Community Affairs v. Burdine, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); Medina–Muñoz, 896 F.2d at 9). If the employer meets this limited burden, the presumption vanishes and the plaintiff must adduce sufficient evidence to demonstrate that age was a motivating factor in the challenged employment action. Zapata–Matos v. Reckitt & Colman, Inc., 277 F.3d 40, 45 (1st Cir. 2002). To do so, plaintiff must show that the proffered reason is pretextual such that discriminatory animus can be inferred. Gonzalez v. El Dia, Inc., 304 F.3d 63, 69 (1st Cir.2002).

In its summary judgment motion, defendant concedes two of the four elements of the prima facie case under the ADEA: that Colon was at least forty years of age and that she was fired. However, defendant states that plaintiffs have not proven the other two elements of their prima facie case. First, defendant argues that

plaintiffs failed to establish that Colon's job performance fulfilled Marriott's expectations. Defendant states that Colon "seriously violated the Company's rules and policies when she failed to complete the required paper work to enjoy Personal Leave, failed to timely return to work and abandoned her employment." Plaintiffs respond that there was no paper work to be completed in order to enjoy personal leave. Because Colon was not asked to fill out any documentation in order to have her initial three (3) week leave approved,[9] she did not expect to have to fill out anything before taking the additional two (2) week leave. Colon admitted in her deposition that she knew the procedure to request and enjoy personal leave and that said procedure was to ask a supervisor for the leave and have it approved by the supervisor and by Human Resources. The supervisor had discretion to grant any time up to four (4) weeks. The record does not show that Marriott had any other requirement for an employee to enjoy personal leave. As stated above, it is a contested fact whether Colon's additional two (2) week leave was approved. Accordingly, defendant's allegation that Colon "seriously violated the Company's rules and policies when she failed to complete the required paper work to enjoy Personal Leave, failed to timely return to work and abandoned her employment" is not an established fact; it is an issue in controversy. This however, does not exempt plaintiffs from having to prove that Colon's performance was satisfactory. In this respect, plaintiffs merely offer Colon's sworn statement that her performance was one of

9. In her affidavit, Colon states that she requested this initial three (3) week leave from Morales and from Kaan. However, when asked the question "Did you request the leave from Mr. Hassan Kan [sic]?" at her deposition, Colon replied "It was Jessica [Morales] who I requested it from." (See Defendant's Exh. 1, 72) (Docket No. 37). Having given a

straight answer to a clear question at her deposition, the Court cannot accept a contradictory testimony without "a satisfactory explanation as to why the testimony is changed." Ramos v. Roman, 83 F.Supp.2d 233, 247 (D.P.R.2000) (quoting Colantuoni v. Alfred Calcagni & Sons, Inc., 44 F.3d 1, 4–5 (1st Cir.1994)).

excellence. Defendant correctly states that on the performance issue, the focus is on the perception of the employer, and the employee's personal opinion regarding her own job qualifications are irrelevant. *Shorette v. Rite Aid,* 155 F.3d 8, 15 (1st Cir. 1998) *(citing Holifield v. Reno,* 115 F.3d 1555, 1565 (11th Cir.1997)). However, defendant conceded that Colon was qualified for the job at the time of her termination.[10] This is sufficient to create an issue as to whether Marriott believed that Colon's performance was satisfactory.

 The last prong of the *prima facie* case requires that plaintiffs prove that defendant sought a replacement with roughly equivalent job qualifications, thus revealing a continued need for the same services and skills. As to the issue of replacement, defendant states that contrary to plaintiffs' allegations that Colon was substituted by a younger employee, she was not substituted at all; her position was eliminated. Defendant submitted sufficient evidence to support these allegations. Albelo's affidavit shows that no individual was hired to substitute Colon in her duties as Captain and that subsequent to her termination, in April 2005, the position occupied by Colon was eliminated in connection with a reorganization of the Food and Beverage Department. Plaintiffs submitted Colon's affidavit, in which she states that a person named Danisael Walker, of 31 years, replaced her immediately after her termination. Defendants argue that this statement is contrary to Colon's deposition testimony in which she stated that she did not know who substituted her in her position of Captain. The Court agrees. "First Circuit precedent is very clear the 'When an interested witness has given clear answers to unambiguous questions, [s]he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.'" *Ramos v. Roman,* 83 F.Supp.2d 233, 247 (D.P.R.2000)(*quoting Colantuoni v. Alfred Calcagni & Sons, Inc.,* 44 F.3d 1, 4–5 (1st Cir.1994)). Colon' clear answer when asked at her deposition whether she knew who replaced her was no. This answer is clearly contradictory to the statement contained in her affidavit and no explanation for the change was offered. Since defendants have provided sufficient evidence to prove that Colon's position was eliminated after her termination and plaintiffs have failed to prove otherwise, they have failed to prove their *prima facie* case.

 The Court notes, however, that even if plaintiffs' *prima facie* case is deemed proven, there is no indication that the decision to terminate Colon had anything to do with her age. None of the age-related comments directed at Colon are attributed to Albelo, who admittedly was the person who made the decision to end Colon's employment. As such, defendant is entitled to summary judgment on plaintiffs' claim that Colon was dismissed in violation of ADEA.

 As to the other adverse employment actions which plaintiffs claim were motivated by Colon's age (as well as her association with a disabled individual), they do not prosper. First, as to the reduction in working hours (and resulting reduction in income), Colon alleges that those reductions were due to her supervisors' belief that she was not reliable be-

---

**10.** Although defendant points to two "Call Out or Lateness Reports" which recorded Colon's late arrival at work and two "Coaching and Counseling Memos," one which admonished Colon for reading the newspaper during working hours and another regarding her obligation to assure that customers pay the check, the fact that defendant conceded that Colon was qualified begs the conclusion that these infractions were not major.

cause she had to take care of her husband. Accordingly, Colon is not alleging that those actions were due to her age. Second, as to the failure to consider Colon for a supervisory position, the evidence is not sufficient for the Court to reasonably infer that Rios, Rivera, Morales and Kaan had less experience than Colon. Colon's statement to this effect, without more, calls for the Court to make an unreasonable inference as to the qualifications of those individuals since plaintiffs have not established that Colon is competent to testify as to those facts. Moreover, the record does not show who made the decision to promote those individuals. If it was Acuna (who Colon alleges to have asked for a promotion), then there is no indication that his actions were motivated by discrimination based on age since the only allegations against him have to do with discrimination based on Colon's association with a disabled individual. Third, as to Colon's demotion to waiter, it is alleged that Rivera was the person who stripped Colon of her duties as Captain. There is no evidence that those duties were given to someone else. Accordingly, summary judgment is granted on the ADEA claims related to the adverse employment actions of never considering Colon for a supervisory position while allowing younger and less experienced employees occupy said position; demoting Colon from Captain to restaurant waiter; taking away from Colon her supervisory functions and duties; and reducing Colon's working schedule and consequently her salary.

▬▬▬ As to plaintiffs' hostile work environment claim under ADEA, plaintiffs have the burden of providing evidence that could lead a reasonable jury to conclude that the offensive conduct "is severe and pervasive enough to create an objectively hostile or abusive work environment and is subjectively perceived by the victim as abusive." *Rivera–Rodríguez v. Frito Lay Snacks Caribbean, a Division of Pep-*

*sico P.R.,* 265 F.3d 15, 24 (1st Cir.2001). This determination requires the same analysis discussed above in relation to the ADA hostile work environment claim. In her affidavit, Colon states that she was subjected to comments about her age on a daily basis and that they affected her emotionally. The affidavit submitted by plaintiffs of a restaurant customer that witnessed an incident in which Colon's supervisor told her that she was "as old as the building" and that she should dye her hair, comments which caused Colon to cry, proves that Colon was affected by the comments and that a customer was concerned. Although the opinion of a third party could prove the objective elements of the hostile work environment claim, in this case, the restaurant client only witnessed one incident. As such, she is not qualified to comment on whether Colon had to endure a hostile work environment or just hurtful comments. While plaintiffs have proven that the conduct was subjectively perceived as abusive by Colon, they have not proven that the comments interfered with Colon's work performance or otherwise altered the conditions of Colon's employment. Because the evidence does not sustain it, defendant is entitled to summary judgment on plaintiffs' hostile work environment claim under ADEA.

*E. Retaliation Claims*

▬▬▬ The ADA's retaliation provision prohibits discrimination against an individual "because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). In order to prove violation of ADA's retaliation provision, a plaintiff must show the following: (1) that she was engaged in protected conduct; (2) that she suffered an adverse employment

action; and (3) that there was a causal connection between the adverse employment action and the conduct. *Oliveras–Sifre*, 214 F.3d at 26 (*citing Soileau v. Guilford of Maine, Inc.*, 105 F.3d 12, 16 (1st Cir.1997)).

ADEA also contains an anti-retaliation provision. A plaintiff making an allegation under ADEA's retaliation provision must make a *prima facie* case showing that (i) she engaged in ADEA-protected conduct, (ii) she was thereafter subjected to an adverse employment action, and (iii) a causal connection existed between the protected conduct and the adverse action. *Mesnick v. General Elec. Co.*, 950 F.2d 816, 827 (1st Cir.1991) *cert. denied* 504 U.S. 985, 112 S.Ct. 2965, 119 L.Ed.2d 586 (1992). "The fact that a plaintiff eventually proves unable to establish that the employer violated the ADEA in the first instance is not fatal to his prima facie case of retaliation. It is enough that the plaintiff had a reasonable, good-faith belief that a violation occurred; that she acted on it; that the employer knew of the plaintiff's conduct; and that the employer lashed out in consequence of it." *Id. citing Petitti v. New England Tel. & Tel. Co.*, 909 F.2d 28, 33 (1st Cir.1990); *Manoharan v. Columbia Univ. College of Physicians & Surgeons*, 842 F.2d 590, 593 (2d Cir.1988).

Plaintiffs argue that as retaliation for complaining about her superiors' behavior, Colon was subjected to retaliatory comments and was ultimately dismissed.[11]

Plaintiffs have presented evidence that Colon complained to Acuna about the discriminatory actions of Rios, Rivera, Morales and Kaan. Colon's deposition testimony and her affidavit both confirm this fact. Defendant tries to devalue this evidence by pointing out that Colon could not specify when she complained to Acuna. This detail does not abate plaintiffs' evidence; they have proved that Colon engaged in protected conduct. Proving that Colon engaged in protected conduct, however, does not make plaintiffs' case. The adverse employment actions must have been related to the protected conduct.

As to the dismissal, there is no proof that it was somehow connected to Colon's protected speech. Albelo, who is attributed the decision of discharging Colon, was not one of the employees Colon complained to Acuna about. Plaintiffs have not established any connection between Colon's protected activity and her termination.

As to the alleged retaliatory comments, we have already determined that the comments regarding Colon's age and those related to her husband's disability did not create a hostile work environment for Colon. As to the additional comments that Colon would have to be discharged because of her complaints, that her leave requests would be denied, that her working hours would be reduced and that she should leave for another Marriott, the evidence is not sufficient to prove a hostile work environment. Colon states in her affidavit that these comments were said

---

**11.** There is no indication on the record that the following adverse employment actions were a result of Colon's complaints to Acuna: never considering Colon for a supervisory position while allowing younger and less experienced employees occupy said position; demoting Colon from Captain to restaurant waiter; taking away from Colon her supervisory functions and duties; and reducing Colon's working schedule and consequently her salary. There is no evidence that these oc-

curred after her complaints nor that they occurred as a result of her complaints. Colon's own affidavit shows that the actions that took place after Colon spoke to Acuna were the harassing and discriminatory comments by Rios, Rivera, Morales and Kaan. Accordingly, the only adverse employment actions that could possibly fall within plaintiffs' retaliation claim are the discriminatory comments and the dismissal.

constantly. This is simply not enough for the Court to make a determination that a hostile work environment was created for Colon in retaliation for complaining about her supervisors' conduct.

### F. Title VII Claims

Defendant argues that plaintiffs do not set forth an actionable claim under Title VII because it only bars discrimination on the basis of race, color, religion, sex and national origin; not on age or association with a disabled individual. Plaintiffs do not address this issue in their opposition, probably because they recognize that Title VII does not prohibit discrimination on the basis of age or disability. *See* 42 U.S.C. § 2000e–2. For said reason, defendant is entitled to summary judgment on plaintiffs' Title VII claims.

### G. State Law Claims

#### (1) Law 100 claims

Law 100 is the Puerto Rico equivalent of the federal ADEA. However, the statutes differ in their burden-shifting frameworks. "Under Law 100, the plaintiff has two requirements to establish a prima facie case: 1) she must demonstrate that she was actually or constructively discharged; and 2) she must allege that the decision was discriminatory." *Cardona Jimenez v. Bancomerico de Puerto Rico,* 174 F.3d 36, 42 (1st Cir.1999) (*citing Alvarez–Fonseca v. Pepsi Cola of Puerto Rico Bottling Co.,* 152 F.3d 17, 28 (1st Cir.1998)). After plaintiff makes the *prima facie* case, "the burden shifts to the employer to prove by a preponderance of the evidence that it had 'just cause' for its actions." *Id.* Then, the burden shifts back to plaintiff, who must "show that the employer's decision was motivated by age discrimination, thereby placing the plaintiff 'in the same situation as an ADEA plaintiff after the defendant has articulated a legitimate non-discriminatory reason[.]'" *Id.* If the employer does not prove just cause, the burden remains with him to prove that the decision was not motivated by age discrimination. *Id.*

■ In this case the employer was not able to prove by the preponderance of the evidence that Colon was discharged for just cause. However, it was proven that the decision was not motivated by age discrimination. As stated above, there is no evidence on the record that the decision to terminate Colon had anything to do with her age. Accordingly, plaintiffs have not carried their burden under Law 100. Defendants are therefore entitled to summary judgment as to this claim.

#### (2) Law 44 claims

■ Law 44 bans discrimination against disabled individuals by any public or private institution that receives funds from the Commonwealth of Puerto Rico. P.R. Laws Ann. tit. 1, § 505. Defendant did not discuss plaintiffs' Law 44 claims in its motion for summary judgment besides stating that plaintiffs "cannot offer any evidence to establish that discrimination due to age or association with a disabled person occurred and hence, this claim should be summarily dismissed with prejudice." As to discrimination due to association with a disabled individual, defendant is incorrect. Since there is no further discussion on defendant's part, summary judgment on plaintiffs' Law 44 claim is denied.

#### (3) Law 80 claims

Law 80 is Puerto Rico's Wrongful Dismissal Act. The only remedy it provides to an employee who is discharged without just cause is entitlement to receive severance payment from his/her employer. P.R. Laws Ann. tit. 29, § 185a.

According to Law 80, a dismissal without just cause is "[one] made by mere

whim or fancy of the employer or without cause relative to the normal operation of the establishment." P.R. Laws Ann. tit. 29, § 185b. Law 80 allows the termination of an employee for a number of reasons which said statute defines as "just cause":

Just cause for the termination of an employee shall be understood to be:

(a) That the worker indulges in a pattern of improper or disorderly conduct.

(b) The attitude of the employee of not performing his work in an efficient manner; or of doing it belatedly and negligently or in violation of the standards of quality of the product produced or handled by the establishment.

(c) The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided a written copy thereof has been opportunely furnished to the employee.

(d) Full, temporary or partial closing of the operations of the establishment.

(e) Technological or reorganization changes as well as changes of style, design or the nature of the product made or handled by the establishment, and changes in the services rendered to the public.

(f) Reductions in employment made necessary by a reduction in the anticipated or prevailing volume of production, sales or profits at the time of the discharge. P.R. Laws Ann. tit. 29, § 185b.

 Under Law 80, an employee bears the initial burden of alleging unjustified dismissal and proving actual dismissal. If the employee meets this burden, "the employer must establish by a preponderance of the evidence that the discharge was made for good cause." *See Hoyos v. Telecorp Communications,* 405 F.Supp.2d 199, 205–06 (D.P.R.2005).

 Defendant argues that plaintiffs' claim under Law 80 should be dismissed since Marriott had just cause to dismiss Colon. However, as stated above, there is an issue of fact as to whether Marriott's stated reason for Colon's dismissal was pretextual. As such, defendant's motion for summary judgment on plaintiff's Law 80 claim is denied.

(4) *Claims under Article 1802*

Article 1802 of the Puerto Rico Civil Code, Puerto Rico's general negligence statute, provides that "a person who by action or omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." PR Laws Ann. Tit. 31 § 5141 (2006). Because plaintiffs' claims under Article 1802 are contingent upon the outcome of plaintiffs' surviving claims, summary judgment is not appropriate at this stage.

## CONCLUSION

For the reasons stated above, the Motion to Strike (Docket No. 46) is GRANTED in PART and DENIED in PART; it is GRANTED as specifically found by the Court herein, otherwise DENIED. The Motion for Summary Judgment is GRANTED in PART and DENIED in PART (Docket No. 29) as follows: Defendant's motion is GRANTED as to plaintiffs' ADA claims of hostile environment and retaliation, otherwise DENIED; GRANTED as to plaintiffs' ADEA claims; GRANTED as to plaintiffs' claims under Title VII; GRANTED as to plaintiffs' claims under Law 100; DENIED as to plaintiffs' claims under Law 44, Law 80 and Article 1802.

IT IS SO ORDERED AMENDING NUNC PRO TUNC OPINION AND ORDER DATED MARCH 24TH, 2008.